This identical question was presented to this court in two cases styled *State* v. *Silberberg*,[1] where the facts were far more favorable to the state in that the land contracts spelled out the necessity of forming a corporation at the vendors' expense to take title to the property, the corporate stock of which was to be issued to the purchasers of suites to the extent of the percentage interests purchased. This court, in that case, held that the land contracts there involved constituted sales of interests in real estate and not the sales of securities as defined in the Blue Sky Law. The opinion was written by Judge Middleton of the Third Appellate District, and the judgment was concurred in by Judges Doyle and Hunsicker of the Ninth Appellate District.

The judgment of guilty and the sentence of the appellant herein are, therefore, reversed, and the appellant is discharged.

*Judgment reversed.*

KOVACHY, P. J., and HURD, J., concur.

DRAKE ET AL., APPELLANTS, *v.* CLAUDER ET AL., APPELLEES.[*]

(No. 8149—Decided June 18, 1956.)

[1]See 166 Ohio St., 101.
[*]Appeal dismissed upon application of appellants, October 31, 1956.

*Messrs. Nichols, Wood, Marx & Ginter* and *Mr. Benson M. Smith,* for appellants.

*Mr. Edward T. Dixon, Mr. George W. Kennealy, Jr.,* and *Mr. Stanley A. Murphy,* for appellees.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Court of Common Pleas, in which the petition of the plaintiffs was dismissed by the court after submission of the case on the evidence.

In the prayer of the petition it is stated:

"Wherefore, plaintiff prays that a restraining order be granted herein without notice, enjoining the defendant corporation and defendants Arthur M. Klotter, M. R. Witschger, E. H. Wiedemann and Walter F. Gabriel from taking any action on behalf of said corporation and further requiring the proper officers of said defendant corporation to certify the election of the plaintiff and defendant Robert Reckman as directors, for a permanent injunction and for such other and further orders and relief as may be just and proper."

It would appear, therefore, that, although counsel have stated the action or proceeding to be one "in the nature of a quo warranto action," it would be more properly considered as a proceeding in mandamus, with injunction requested as collateral relief, and an incidental declaration of the rights of the plaintiff upon which he predicated his prayer for general and specific relief. The evidence also bears out this conclusion.

A motion for separate findings of fact and conclusions of law was filed before the entry of judgment. Section 2315.22, Revised Code, amended and effective September 30, 1955, requires the court to make such findings when application therefor is made prior to the entry of the final judgment. No such findings of fact and conclusions of law appear in the record, original papers or transcript of the docket and journal entries. However, the court rendered an opinion, in which it declared the rights of the plaintiff, adverse to his contentions.

This appeal has proceeded rapidly and was heard before the 50 days had elapsed from the filing of the notice of appeal.

No point is made by the appellant of the failure to comply with the motion for findings and conclusions, and the motion will, therefore, be passed without further comment.

The proceeding originates in a controversy arising out of an incompleted election of directors held at an annual meeting of the Columbia Building & Loan Association. Statements have been made concerning certain controversies and opposing attitudes among the stockholders existing prior to such election which seem to have no direct bearing upon the factual issues or on the law presented by this appeal, and will be passed without comment.

The names of four candidates were placed in nomination for directors, M. R. Witschger, Stanley Murphy, Robert Reckman and Robert Drake. Robert Reckman is joined in interest with the plaintiff. The other nominees, Murphy and Witschger, are opposed in interest to the plaintiff and Reckman. The board of directors appointed E. H. Wiedemann and A. M. Clauder as judges of election and John Fisch, Sr., and Robert Clauder as tellers or clerks of election. The evidence fails to show that these persons, so designated as judges and clerks of election, ever took any formal action to organize as a board or elect a chairman.

Thus it will appear that Drake, a nominee for director, is plaintiff, and that Witschger, Murphy and Reckman, also nominees for director, Wiedemann and A. M. Clauder (whose name is misspelled in the petition as Klotter), appointed judges of election, Gabriel, secretary and director in the Columbia Building & Loan Association, and such association are defendants.

From the evidence it appears that an annual meeting of the stockholders was held at the offices of the association on January 9, 1956, pursuant to the constitution and bylaws of the association, although there is no record of it in the minutes of the association. The nearest to such record is a form in which all the essentials are left blank. All the persons hereinbefore named were present. A ballot box was installed, and ballots were from time to time during the election period placed therein. For convenience, the value of the ballots was computed upon multiples of dollars rather than multiples of shares of stock which had a value of $500.

Murphy testified as to the election procedure as follows:

"The procedure was that they should give their ballots and the proxy to the judges, and the judges would then refer it to the clerk who was tallying and tabulating—tallying the votes on the tally sheet, and then he in turn would give it to the clerk who had charge of the ballot box. He deposited it in the box."

Reckman testified:

"The Court: Well, at this point was there a box, a ballot box?

"The Witness: Yes, there was a ballot box. The way the procedure worked, your Honor, the vote was handed to Mr. Wiedemann. He tabulated it on the sheets that are on that desk. Then he took the ballot or he asked somebody else to drop it in the box that was in the front. I gave him all of these votes in a package and asked if I could help him tabulate them or if he wanted to tabulate them or just how they wanted to tabulate the election. At that point the thing changed that we all sat around the table to discuss what should be done. We ran a tape. I called off our votes."

It is evident from the evidence that quite a number of ballots were placed in the ballot box constituting votes for Witschger and Murphy and a few for Drake and Reckman, when a dispute arose based upon adverse contentions involving the question whether votes of borrowers could be accepted to the extent they had paid upon their loans.

To say the least, the whole election procedure as carried on was chaotic. First, there was objection to casting votes by proxy in bulk. Later, those votes and proxies were separated and presented to members of election committee. Coincident with this a discussion arose resulting in a mutual agreement of all concerned to tabulate the votes, including those taken from the ballot box and those tendered. The result of such tabulation was to show that Drake and Reckman had votes or proxies for the requirement of approximately $56,000, all of which represented amounts credited to depositors; and that Witschger and Murphy had votes or proxies for the equivalent of approximately $46,000, which represented amounts credited to depositors, and $19,000, which represented amounts credited to borrowers, to the extent they had paid on their loans. Thus,

if borrowers' votes were credited to Witschger and Murphy, they would predominate over those tendered by Drake and Reckman. The plaintiff and his association protested that the votes of borrowers could not be cast in favor of Witschger and Murphy. The latter insisted that they were entitled to such votes. Out of the ensuing turmoil, an agreement was reached to impound all the votes and proxies, whether taken from the ballot box or not, together with the tabulations, and to place votes, proxies and tabulations in an envelope which was sealed and endorsed by a number of those present. This was received as an exhibit, and the envelope opened by the court. The meeting was then adjourned. It is apparent that there was no formal meeting of the board of directors or action taken by the board on January 9—the annual meeting of the stockholders— and it is apparent that there was also no formal organization of the election board, no decision upon who was elected, and, in fact, no election of any directors.

In the examination of witness Wiedemann, the following appears in the record:

''Q. Mr. Wiedemann, you stayed there the whole evening, is that correct. A. That is correct.

''Q. Until we all left? A. That is right.

''Q. And you helped to put those ballots away? A. That's correct.

''Q. Did you report the election to anyone, the results of an election to anyone?

''The Court: There is no need for that question. There was no meeting. There couldn't be any report. A. I was going to answer you that way.''

It is, therefore, obvious that the relief sought by the plaintiff must be denied.

However, giving the petition the full benefit of every intendment, it may be considered that the trial court should have, in its judgment, declared the rights of the parties, especially as there was a valid motion filed for a finding of fact and conclusions of law, and the trial court, in its opinion, which is before the court, found that the votes of borrowing members should have been given effect.

This declaration of rights involves a consideration of the

appropriate statutes, the constitution and bylaws of the association.

Section 1151.20, Revised Code, provides in part:

"A building and loan association may issue stock to members, upon certificates or upon written subscription, on such terms consistent with Sections 1151.02 to 1151.55, inclusive, of the Revised Code, as its constitution and bylaws provide * * *. Each member may vote his stock to the extent and in the manner provided by the constitution and bylaws of the association, but no member shall accumulate his votes."

Section 2, Article IV, of the constitution of the association provides:

"At all meetings of members, each member having stock of record for at least thirty days prior thereto, shall be entitled, either in person or by proxy held by a member, to one vote for each share of stock paid in full and a proportionate fractional vote upon the basis of the amount paid in upon each share of stock so held of record by him, but no member may accumulate his vote."

Section 1151.25, Revised Code, provides:

"A building and loan association may cancel shares and parts of shares of stock upon which the credits have been repurchased by it, or upon which loans have been repaid, and reissue them as new stock."

Section 6, Article VI, of the constitution of the association provides:

"The directors shall have the power to adopt, amend, repeal and enforce such bylaws, resolutions and orders as they may deem necessary to enable them to properly manage and control all the business, property and rights of the association.

"They shall provide for the issue and cancellation of stock; for the deposit with and the withdrawal of funds from depositaries to be designated by them at the beginning of each fiscal year, and the designation of a certain sum to be kept in the office of the association for the transaction of current business; for the making of loans, and no loan shall be made until it has been approved by the board of directors; and they are hereby authorized to do all and singular the things necessary to enable this association through them, to exercise all the powers auth-

orized by law that are not inconsistent with this constitution."

Section 26 of the bylaws of the association provides:

"Loans granted for a period in excess of five years shall be known as installment loans, and shall be made payable in stated weekly or monthly installments sufficient to retire the loan within twenty years, provided, however, that installment loans on a farm or farms under cultivation may be made in quarterly or semiannual payments sufficient to retire the loan within twenty years. The terms and conditions of each loan shall be set forth in the obligation given by the borrower for the repayment of the same, and in all installment loans the borrowers' payments shall be applied.

"First: To the repayment of insurance, taxes and other charges against the borrower provided such charges are legally made.

"Second: To the discharge of the interest.

"Third: The balance of such payments shall be credited as dues on the stock on which such loan is taken. On June 30 and December 31 of each year, the aggregate of such dues, plus such dividends as may be declared thereon, shall be credited upon the principal of the borrowers obligation and a corresponding amount of stock cancelled. Interest shall thereafter be charged only upon the amount the borrower still owes. Further, the total amount of weekly or monthly dues required to be paid shall not be decreased but shall remain the same until the loan is paid in full; provided, however, that when a borrower shall pay a lump sum of $500 or multiples thereof on account of dues, such amount may, at the request of a borrower, be applied to the payment of the loan and the charges thereunder with cancellation of a corresponding amount of stock. Further, the total amount of weekly or monthly payments required to be paid shall not be decreased, but shall remain the same until the loan is paid in full."

The secretary of the association testified that the provisions of the constitution and bylaws were carried out by him.

It is apparent, therefore, that under the statutes, constitution and bylaws of the association, the borrowers had the right of vote only to the extent that payments made by them had not been credited on their loans and the equivalent amount in stock cancelled.

There is some contention made that the evidence fails to show formal action by the board of directors, cancelling the stock of borrowers as their loans were paid off. It is apparent from the testimony of the secretary of the association that this procedure was simply an automatic process in conformity to the provisions of the constitution and bylaws of the association. When the payments on loans were allocated to the several items included in such payments, such as dues, interest, and principal payment semiannually, the books of the corporation showed such payments and such allocation, and the bylaws automatically took effect, providing that the equivalent in stock *shall* be cancelled.

In the brief of the defendants, only a portion of section 26 of the bylaws is cited. It is claimed that the borrower has the *option* to have his stock cancelled. A reading of the entire section shows that such option applies only where lump sums of $500 or more are paid, and that the preceding part of the section applies to the ordinary weekly payment of dues, in which semiannual automatic cancellation is required. It is evident that there is no formal issuance of a certificate of stock to a borrower, nor is any independent stock ledger employed. The whole matter of stock accounting is carried on in the books of the association covering payment of dues, calculation of interest and dividends, and involving the automatic cancellation of the appropriate amount of stock.

In some associations, this process is effected automatically upon the payment of weekly dues. However, such procedure calls for more elaborate and costly accounting apparatus, and in the interest of economy is not employed by smaller associations.

*Eversmann, Receiver,* v. *Schmitt,* 53 Ohio St., 174, 41 N. E., 139, 53 Am. St. Rep., 632, 29 L. R. A., 184, has been cited in favor of the contention that borrowers are entitled to votes to the extent of the entire amount paid on their loans. In some associations, such as that involved in the *Eversmann case,* there is no periodic cancellation of stock, and the borrower, therefore, remains a stockholder to the full amount of his payment. Certainly, however, no one, whether he be depositor or borrower, can vote cancelled stock. The votes predicated upon the can-

celled stock of the borrowers should not, therefore, be recognized in favor of the election of a director in the association here involved. Under the constitution and bylaws of the association herein involved, however, each borrower is entitled to vote stock for which he has subscribed to the extent he has made payments into the association, and which have not been allocated on the books of the association to the retirement of his loan and the consequent cancellation of his stock subscription.

The judgment of the trial court is affirmed, but modified, to indicate a finding herein that a borrower is entitled to vote stock in this association to the extent of his payments into the association which have not been allocated to payments on his loan, with the consequent automatic cancellation of the appropriate amount of stock, and where such borrower has made lump sum payments of multiples of $500 and has exercised his option to have such lump payments allocated to stock.

The temporary restraining order is dissolved.

*Judgment accordingly.*

Ross, P. J., Hildebrant and Matthews, JJ., concur.